### FRANK MARTIN v. THE STATE.

#### No. 1614.   Decided December 15, 1897.

**1. Special Venire—Motion to Quash.**

Where a special venire was drawn for 100 jurors, a majority of whom were excused by defendant himself as being disqualified to sit in the case, and only forty-two were in attendance; Held, this was no sufficient ground upon which to quash said venire, there being no suggestion of any unfairness in the matter; and when it further appeared, that after the list of those in attendance was exhausted, 100 talesmen were summoned and the jury completed out of the first fifty-six of those, leaving defendant with three unused peremptory challenges on hand.

**2. Motion for New Trial—Errors in Charge of Court—Bill of Exceptions.**

Suggestions of error in the motion for new trial with reference to the charge of the court, and the failure to give special requested instructions, can not be regarded as bills of exception to said supposed errors.

**3. Accomplice Testimony—Charge.**

Where the court, in the charge, properly defined what constituted an accomplice, and fully submitted whether or not certain parties were accomplices, this was all that was required without a direct instruction to the effect that said parties were accomplices.

**4. Murder—Evidence as to Other Contemporaneous Murders—Charge.**

On a trial for the murder of one Mrs. C., where evidence had been introduced as to the killing of her husband and son at the same time and place, and the court, in effect, charged the jury that such evidence was only admitted to show the circumstances of the killing of Mrs. C., and defendant's connection therewith, and was not to be considered for any other purpose; Held, the evidence as to the killing of the husband and son was res gestae and the charge properly guarded the rights of the defendant by limiting and restricting it to its legitimate purpose; and it can not be legitimately construed as depriving defendant of any of his rights otherwise as to accomplice testimony, and especially since the jury were also properly instructed as to what would constitute an accomplice, and told that they could look to the whole testimony for the purpose of ascertaining whether or not certain witnesses were accomplices.

**5. Evidence—Murder in the First Degree—Death Penalty.**

See the opinion for facts stated, which the court holds amply sufficient to support a verdict and judgment for murder in the first degree, with the death penalty.

APPEAL from the District Court of Wharton. Tried below before Hon. T. S. REESE.

Appeal from a conviction for murder in the first degree, with the penalty assessed at death.

The indictment charged appellant and Jim Martin jointly with the murder of Nancy Jane Crocker, by shooting her with a gun on or about the 19th day of May, 1895.

Appellant Frank Martin was tried alone.

This is the second time this case has been appealed. See Martin v. State, 36 Texas Criminal Reports, 632. It is also a companion case to the cases of George Williamson v. State, 37 Texas Criminal Reports, 437, and Jim Williamson v. State, 36 Texas Criminal Reports, 225. In this latter case the important facts will be found stated. A full history of this atrocious murder can be fully seen in the above reported cases, and it is unnecessary to repeat it.

*Linn & Mitchell* and *A. D. Sparkman*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at death; hence this appeal.

There is only one bill of exceptions in the record, and that is to the refusal of the court to quash the special venire ordered and summoned in the case. It appears from said bill, in connection with the explanation of the court thereto, that the motion was made on the ground that only forty-two out of one hundred jurors drawn were in attendance—that is, that the others, from one cause or another, were disqualified, or had been excused by the parties, and because of this reduction, appellant claims that he did not have a full venire to select from, and therefore moved to quash. This was no sufficient ground upon which to quash said venire. There is no suggestion of any unfairness. In fact, it appears that the majority of the special veniremen were excused by the appellant himself, as being disqualified to sit in the case. After this list was exhausted, it

appears that the court made an order summoning one hundred talesmen. These were brought in, and the jury completed out of the first fifty-six of said list of talesmen; and defendant still had three challenges remaining on the completion of the jury. We fail to see any error in this action of the court.

There is no bill of exceptions to the charge of the court, or to the failure of the court to give certain special charges asked by appellant. In the motion for a new trial, however, appellant suggests that the court erred in failing to give special charges numbers 2 and 3 asked by him, and because the court erred in his charge to the jury in failing to instruct them properly that the mere presence of the defendant at the scene of the killing would not render him guilty. These mere suggestions of error in the motion for a new trial can not be regarded as bills of exception to the charge of the court, or to the failure of the court to give the special charges requested. We will, however, examine the matters complained of, in order to ascertain if the court committed any possible error in this respect.

The first special instruction asked by appellant was a direct instruction to the effect that John Rickard, Gus Colburn, and Emmet Colburn were accomplices. The court defined to the jury what constituted an accomplice, and fully submitted to them the question whether or not said parties were accomplices, and this, we think, was all that was required.

Appellant, in the argument of his counsel, also complains of that portion of the charge of the court as follows: "Certain evidence has been introduced in this case as to the killing of the two Crockers (father and son) at the same time and place the deceased, Nancy Jane Crocker, is alleged to have been killed. This testimony is admitted only for the purpose of showing the circumstances under which Nancy Jane Crocker was killed (if she was in fact killed), and defendant's connection therewith. Defendant is on trial, charged with the murder of the said Nancy Jane Crocker; and the testimony as to the killing of the other parties is not to be considered for any other purpose than to show the killing of Nancy Jane Crocker, and the circumstances under which the same was done, and the defendant's connection therewith (if he was connected with it)."

The contention, as we understand it, is that by this charge appellant was deprived of the testimony in regard to said killing which tended to show that the witnesses Gus and Emmet Colburn and John Rickard were accomplices in the murder of Nancy Jane Crocker. We do not so understand the charge. The evidence in regard to said killing of E. C. and Wesley Crocker was a part of the res gestæ, and was introduced by the State; and the object of the court in said charge was merely to guard the rights of the defendant against the jury considering the homicide of said person for any other purpose than as having a bearing upon the murder of Nancy Jane Crocker, for which the defendant was then on trial. The charge did not deprive the defendant of any proper use of the testimony connected with said other killing which might tend to show that the two Colburns and John Rickard were accomplices; and we do not think the

jury could have possibly misunderstood the purpose of the court in this instruction. In another portion of the charge, the jury were informed what it took to constitute an accomplice, and were properly instructed in regard thereto; and of course they could look to the whole testimony connected with the killing of Nancy Jane Crocker for the purpose of ascertaining whether or not said witnesses were accomplices.

We think the testimony is ample to sustain the conviction. The testimony of John Rickard, Gus Colburn, and Emmet Colburn shows that Frank Martin, the appellant, was the leader and moving spirit in this atrocious murder and, if it be conceded that they were each accomplices, still there is ample testimony tending to connect appellant with the murder. Shilling, the deputy sheriff, early on Monday morning, when he was at Henry Colburn's house, saw the defendant, Frank Martin, drive the two-horse wagon up, and ungear it; said wagon having been used the night before to carry away and conceal the bodies. Henry Colburn, who was in no way connected with this homicide, but who was at home, sick in bed, testified that Frank Martin came to his house on the night when the murder of the Crockers was being committed, and while it was transpiring, and got a cup of coffee. It seems that said witness had already been apprised in some way that Mrs. Nancy Jane Crocker had been shot down upon the prairie while attempting to escape from Emmet Colburn's house, to seek succor for her husband. While defendant was drinking the cup of coffee something was said about the woman being left on the prairie, and that the wolves would eat her. Defendant said, if he had not minded the wolves off of Day, they would have eaten him. (It is suggested by counsel for appellant that Day was a friend of defendant, and had previously been killed by Crocker.) Mrs. Will Colburn testified, in effect, to the same incident. She states that some time during the night of the 19th of May, 1895, Frank Martin came to Henry Colburn's house, where she then was, and asked his wife for a cup of coffee, and they talked about the killing of the woman. She asked him if they were going to leave the woman on the prairie. He said, "Yes;" and Mrs. Colburn said, "The wolves would eat her." Defendant said "the wolves would have ate Day up if he had not minded them off." He then left, and witness heard shooting over towards the house late that night, and saw fire blaze up; just looked like the house was on fire; then it would die out. Witness said that she saw this several times. It looked like fireballs being thrown into the house. The testimony of the Colburns and John Rickard showed that balls were made of blankets, and saturated with coal oil, and thrown into the Emmet Colburn house, where old man Crocker and his son were beseiged, to burn them out, or to ascertain in what part of the house they were, so that they could shoot them. Pink Scroggins testified that he met Frank Martin that night about 8 or 9 o'clock at Henry Colburn's house. The fight had then been in progress for some time. Witness asked him about the trouble going on, and if it could not be stopped. Defendant told him, "No," it could not; and then left.

It is not claimed that any of this testimony came from accomplices, and it tends strongly to show that appellant was connected with the murder of Mrs. Nancy Jane Crocker, whose body, together with that of her husband and little son, was found several days after the homicide, concealed in Seymour's pasture, some seven miles away. No doubt many grave crimes and heinous murders have been committed in this State, but we undertake to say that none surpass this in atrocity. The details thereof show a blood-curdling tale of horror; and the evidence indisputably connects this defendant with the murder of these three persons; not only so, but shows that he was the leader and master spirit in its perpetration, and demonstrates that, at the time, he was utterly devoid of social duty, and fatally bent on mischief, and that he was instigated throughout by the most diabolical malice that can actuate the human heart. There is no mitigating circumstance in the record that would tend in the least to relieve this crime of murder in the first degree, and the jury properly affixed his penalty at death.

There is no error in the record and the judgment is affirmed.

*Affirmed*