## JOHN LENTZ v. THE STATE.

### No. 3237. Decided March 8, 1905.

**1.—Murder in Second Degree—Charge of Court—Self-Defense.**

Where the testimony of defendant showed that A. had run away from the scene of the homicide at the time defendant fired the shot which killed deceased, there was no error in not submitting a charge upon the right of defendant to defend himself against deceased and A.

**2.—Same—Manslaughter—Charge of Court.**

Where the appellant's testimony made out a case of perfect self-defense, and that of the State an unprovoked killing, the issue of manslaughter was not in the case, and the court did not err in not charging on the law of that grade of homicide.

**3.—Same—Charge of Court—Self-Defense.**

Where the court instructed the jury in substance that defendant could defend himself against real or apparent danger viewed from his standpoint, there was no error.

**4.—Same—Fact Case.**

See facts which are held sufficient to sustain a verdict of murder in the second degree.

Appeal from the Criminal District Court of Harris. Tried below before Hon. J. K. P. Gillaspie.

Appeal from a conviction of murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

The defendant contended that he killed deceased in self-defense. There was testimony that deceased did not fire a shot and also testimony on part of the State's witness that deceased admitted that he fired at defendant. The evidence that deceased was armed at the time of the homicide was uncontradicted. There was also proof that his pistol had been fired. The defendant testified that deceased fired the first shot at him, whereupon he fired. His statement was substantially as follows concerning the difficulty: "When I got home Mrs. Kersh was sitting on the front gallery with her arms around Hillendahl (deceased). I said, 'I don't want any sparking around here.' I did not swear or curse and I was not angry at all. I gave my horse to Ed. Allen to put up, and went into the house. Mrs. Kersh followed me in saying that she had given so much credit to Ed. Allen. * * * I told her that was too much, etc. About that time Ed. Allen came in and I told him I wanted my money, etc. He became angry and cursed and abused me, calling me a black bastard and son of a bitch, etc. I told him to

get out of the store. He was drunk and wanted to fight me and told me to come outside and he would whip me, using vile language and called me a Dutch son of a bitch at the time. So, Mr. Hillendahl stepped up—he came from the outside. * * * And when he came in he said, 'Let me pay the son of a bitch * * * and threw $2 in the center of the counter. I was putting my matches on the shelf. He said, 'Here is your damned money, I will pay for the nigger all right.' I said, 'I did not ask you for the money,' and by that time this nigger, Ed. Allen, came up at the end of the counter and had an open knife in his hand * * * and an iron-handled quirt in the other hand and said, 'You G—d damn Dutch son of a bitch, you have got your money now, G—d damn you, come out here and I will fix you.' I was right up in front of Hillendahl, pretty near the center of the counter. So I turned to the nigger and I said to him, 'G—d damn you, don't you curse me like that, you get out of here,' and I made a move for my pistol, and when I moved close to the pistol, the nigger stepped back—he was right at the end of the counter, not more than a foot from the end, no more than three feet from the pistol—the nigger stepped back toward the center of the room, that is, towards the entrance; he moved back about three feet from the end of the counter, close to the ice box, and he hollered, 'Will, kill him!' 'Will, kill him!' So I turned from him to Hillendahl. * * * When I did this, Hillendahl drew that gun right in my face, and I threw up my hands * * * and he shot, and the shot powder burned my face; then I grabbed my pistol and shot him. * * * My shot wounded him, so he could not fire at me a second time; he tried, but could only cock his pistol and it went off into the floor in front of the counter. The negro ran out of the store."

On cross-examination defendant among other things testified: "Question: Why didn't you shoot at the nigger? Answer: He ran as soon as Hillendahl shot, before I shot. Ques.: What did you want to shoot Hillendahl for; the negro was there, if you had nothing against Hillendahl? Ans.: When Hillendahl shot, the nigger run out the back way; when he seen me grab my pistol, the nigger ran out the back way. Ques.: The negro knew where your pistol was, he could not keep from seeing your pistol? Ans.: Why sure. Ques.: It was right there where everybody could see it? Ans.: Yes, sir! Ques.: You never shot at the negro at all? Ans.: I didn't have any chance; the negro ran out before I got my gun."

The State's witnesses, Kersh and Allen, both testified that neither the deceased nor Allen cursed or molested defendant, that when the latter asked Allen to pay him for the beer he owed him, Allen replied he would, but did not have the money then, that deceased then said he would pay it and put down the $2 on the counter, when defendant without provocation reached for the pistol and shot deceased, who fell helpless into the woman's arms, and that defendant fired one or two more shots, blew out the lights, and reloaded his pistol, etc. They also tes-

tified that deceased did not fire at all. There was some discrepancy between the testimony of these witnesses as to the number of shots fired and the language used by the parties to the difficulty but as to the facts of the homicide they corroborated each other. Allen denied making an attack upon defendant with a knife and quirt, but admitted that he had a quarrel with him about his account with defendant. The sheriff found a bullet under the floor which apparently had been fired through the floor and which fitted the pistol of deceased and was larger pistol was a 44 and deceased's a 45 caliber.

The bullet found in the wall of the house behind the counter seemed to be smaller than the one that went through the floor. Defendant's pistol was a 44- and deceased's a 45-caliber.

The charges of the court on self-defense was as follows: "If you should find from the evidence that the defendant did shoot and kill the said William Hillendahl with a pistol, but you should find that at the time he did so shoot and kill him the said Hillendahl, the said Hillendahl had shot at and was then and there attempting to shoot the defendant with a pistol with the intent then and there to kill or do serious bodily injury to, or, that it then and there reasonably appeared to defendant that said Hillendahl was then and there attempting to kill or to do serious bodily injury to him the said defendant, then and in that event you will find him not guilty. You are instructed that in judging the defendant and as to the danger or apparent danger to him, he must be judged from his standpoint and as the same reasonably appeared to him; and it would make no difference if the danger was real or not, if the danger was reasonably apparent to him. If there was an attempt by the said Hillendahl to shoot said defendant and thereby kill him or do him serious bodily injury, he would not be bound to retreat to avoid killing Hillendahl, and he would have the right to act so long as the danger was apparent to him."

A. C. Van Velzer, for appellant.—It is impossible to distinguish the attack by Allen from the attack by deceased, as it was all one event, or res gestæ. That Allen sought defendant's life is seen in the manner of the attack, the weapons used and in his words to Hillendahl, "Will, kill him." It is impossible to draw any other conclusion from the acts and words of Allen other than he sought the life of defendant. To our minds his part therein is inconsistent with any other purpose than a menace to the life of defendant. Defendant testified that deceased fired the first shot—that shot was fired immediately upon the words being spoken by Allen, "Will, kill him." There were no other persons present in the room other than the deceased, defendant and Allen, and the first shot was fired by deceased at defendant. Carter v. State, 35 S. W. Rep., 378; Bonnard v. State, 25 Texas Crim. App., 173; Cartwright v. State, 16 Texas Crim. App., 473; Meuly v. State, 26 Texas Crim. App., 274; Bean v. State, 25 Texas Crim. App., 346; Jones v. State, 20 Texas Crim. App., 665; McLaughlin v. State, 10 Texas Crim. App., 340.

In a murder case, if the evidence, however inconclusive, tends to prove facts from which the jury might deduce a finding of manslaughter, it is incumbent on the court to charge on that issue. If the court is in doubt whether to so charge, the charge should be given. Halbert v. State, 3 Texas Crim. App., 656; Robles v. State, 5 Texas Crim. App., 346; Jones v. State, 33 Texas Crim. Rep., 492; Johnson v. State, 26 Texas Crim. App., 631; Hill v. State, 5 Texas Crim. App., 2; Williams v. State, 7 Texas Crim. App., 396; Spivey v. State, 30 Texas Crim. App., 343; Phillips v. State, 26 Texas Crim. App., 228.

The statute defining "adequate cause" is merely explanatory and is not restrictive. *Any facts* sufficient to create sudden terror, or passion so as to cause a person of ordinary temper to be incapable of cool reflection is adequate cause. Childers v. State, 33 Texas Crim. Rep., 509; Williams v. State, 15 Texas Crim. App., 617; Wadlington v. State, 19 Texas Crim. App., 266; West v. State, 2 Texas Crim. App., 460.

When any facts, whether singly or collectively, tend to show conditions or circumstances which a jury might consider adequate cause that issue should be submitted. Gilcrease v. State, 33 Texas Crim. Rep., 619; Baltrip v. State, 30 Texas Crim. App., 545; Milrainey v. State, 33 Texas Crim. Rep., 577; Mackey v. State, 13 Texas Crim. App., 360.

The fact that this is a clear case of self-defense, according to defendant's theory, does not lessen the "sudden terror" or "adequate cause." That a man under such circumstances would ordinarily be incapable of cool reflection does not affect his right of self-defense. Hawthorne v. State, 28 Texas Crim. App., 212; Cochran v. State, 28 Texas Crim. App., 422; Jones v. State, 17 Texas Crim. App., 602; Arto v. State, 19 Texas Crim. App., 126; Bonner v. State, 29 Texas Crim. App., 223; Orman v. State, 24 Texas Crim. App., 495; Jackson v. State, 32 Texas Crim. Rep., 192; Thuston v. State, 21 Texas Crim. App., 245.

In our motion for a new trial and in our assignments of error we have pointed out that the general charge on self-defense was upon the weight of evidence, and that it was more onerous upon defendant than the law requires. For instance, the court charged the jury that if deceased first fired at defendant and if deceased caused defendant to fear for his life or to fear serious bodily harm then defendant had the right to protect himself. Defendant's right of self-defense is made to depend at all events upon the belief or finding that deceased fired the first shot. Such is not the law. Defendant's right of self-defense depended upon the appearance of danger and not upon whether Hillendahl fired the first shot. The court seems to have attempted to apply the language in his charge to the facts of the case, but in so doing misdirected the jury in this fundamental respect. It was a disputed point as to who fired the first shot, the two State's witnesses testifying that defendant fired first while defendant testified that deceased fired first. With this

conflict of evidence, to require defendant to await his self-defense until he is fired at once by deceased is not the law, and the court in requiring the jury to find both that deceased first fired at defendant and also that defendant was in danger before he shot deceased went beyond any requirement of the law that we have become familiar with. The right of self-defense arose from the appearances of danger alone and not from the fact alone that Hillendahl fired first, nor from a finding that Hillendahl fired first when considered with any other fact. But the court told the jury that Lenz had a right to defend himself only in the event that Hillendahl had already fired at him and appeared to be still in danger.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of twenty years.

We will discuss the errors assigned in the order in which they are stated in appellant's brief. The first complaint is, that the court erred in not charging upon the right of defendant to defend himself against deceased and one Allen, claiming that the testimony shows that both parties were making an assault upon appellant at the time of the fatal shot. After a very careful review of the testimony we do not think this contention is correct. Allen had run away from the scene of the homicide at the time the shot was fired, according to the testimony of appellant himself; and certainly could not have been in the attitude of making an assault upon appellant, while fleeing from the scene of the homicide.

Appellant's second insistence is that the court erred in not charging on the law of manslaughter. From the State's testimony the issue of manslaughter is not presented. Appellant's testimony makes out a case of perfect self-defense; while the State's testimony shows an unprovoked killing upon grossly inadequate cause: in fact no cause at all.

Appellant also criticises the charge of the court on self-defense. The charge taken as a whole is correct. It tells the jury in substance that appellant could defend against real or apparent danger, viewed from his standpoint.

The fourth insistence of appellant is that the verdict of the jury is not supported by the evidence. We believe the evidence amply warrants the finding of the jury. No error appearing the judgment is affirmed.

*Affirmed.*

Henderson, Judge, absent.

[Motion for rehearing overruled without written opinion.—Reporter.]