### Jim D. Follis ·v. The State.

No. 3944. Decided March 20, 1907.

1.—Murder in First Degree—Continuance—Postponement.

Upon trial for murder, pending a motion for continuance, the court had a right to know whether defendant desired to wait for a witness, from whom he received a telegram during the trial, whether he desired a postponement; and when defendant's counsel refused to say, the court did not err in proceeding with the trial.

2.—Same—Confession—Question of Fact—Warning.

Where upon trial for murder there was enough in the statement of the officer to question the facts whether defendant's confession was voluntary, the issue should have been submitted to the jury; and the opinion of the witnesses should have been excluded.

3.—Same—Charge of Court—Accomplice—Weight of Evidence.

Upon trial for murder where the State relied on the testimony of an accomplice and the confession of the defendant, it was error to charge on accomplice testimony that the confession of the defendant could be looked to for corroboration of the testimony of an accomplice, when such confession was so corroborative and proven by other witnesses than an accomplice.

**4.—Same—Corpus Delicti—Statutory Requirements—Corroboration.**

While the corpus delicti may be proven by the testimony of an accomplice corroborated by the confession of the defendant and vice versa, no person under the statute can be convicted on any grade of homicide unless the body of the deceased or portions of it are found and sufficiently identified to establish the fact of the death of a person charged to have been killed.

**5.—Same—Cause of Death—Insufficient Evidence—Means Used.**

Where upon trial for murder, the evidence might have been sufficient to render the identification of the body of the deceased complete, yet where the evidence to corroborate the confession of defendant as to the criminal means used to cause the death of the person whose body had been found, was not shown, or that the death of such person was brought about by violence, the conviction could not be sustained.

**6.—Same—Verdict—Jury's Prerogative.**

Upon trial for murder, where the jury returned a verdict without stating the degree, assessing defendant's punishment at ninety-nine years imprisonment, the court had no right to write a verdict for the jury finding the defendant guilty of murder in the first degree. See opinion for testimony held insufficient to sustain a conviction.

Appeal from the District Court of Henderson. Tried below before the Hon. B. H. Gardner.

Appeal from a conviction of murder in the first degree; penalty, imprisonment in the penitentiary for life.

The opinion states the case.

*Guy Green,* for appellant.—On question of corpus delicti: Gay v. State, 60 S. W. Rep., 773; Walker v. State, 14 Texas Crim. App., 637; Follis v. States, 78 S. W. Rep., 1069; Ex parte Patterson, 16 Texas Ct. Rep., 710. On question of corroboration of accomplice: Reagan v. State, 16 Texas Ct. Rep., 239; McCulloch v. State, 71 S. W. Rep., 278; Crawford v. State, 34 S. W. Rep., 927; Dickenson v. State, 63 S. W. Rep., 328; Seeley v. State, id., 310; McVeigh v. State, 62 S. W. Rep., 767. On question of means used: Follis v. State, 78 S. W. Rep., 1069; McMurtry v. State, 43 S. W. Rep., 1012. On question of confession: Searcy v. State, 28 Texas Crim. App., 513; Cook v. State, 32 Texas Crim. Rep., 27; Paris v. State, 31 S. W. Rep., 856. On question of verdict: Sanders v. State, 18 Texas Crim. App., 374; Armstead v. State, 22 Texas Crim. App., 57; Blocker v. State, 27 Texas Crim. App., 42.

*F. J. McCord,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at imprisonment in the penitentiary for life; and brings the case up on appeal.

This case was before this court at a former term, and was reversed. See 78 S. W. Rep., 1069.

The circumstances summarized show that Hamp McDonald lived in rather a secluded part of Henderson County near the Trinity River, and kept a ferry for crossing on said river, and there were few neigh-

bors in that community, Bill Follis living perhaps nearest to Mc-Donald. Appellant, Jim D. Follis, was a nephew of Bill Follis, and during the fall of 1902, was working for McDonald and assisting him in connection with the ferry. Sometime in October McDonald disappeared. Some inquiry was made on account of his absence, and appellant reported that he had gone to the San Antonio fair, and would not likely be back for two weeks. Appellant, and his uncle, Bill Follis, and one Dock Brunson, were arrested charged with the offense of killing deceased. Appellant made a confession in which he admitted killing the deceased, which he claimed was at the instigation of his uncle Bill Follis. The testimony of Bill Follis and his little son Will Tom Follis constitutes the principal evidence against appellant. The testimony of Bill Follis is to the effect that a day or two after the alleged commission of the offense, Jim Follis (appellant) told him that he had killed McDonald, but witness thought it was a joke. Some two weeks subsequent to this appellant, in company with him and his little boy Will Tom, went down to a raft on the river; appellant went in on the raft and pulled up a human body, which had the appearance of having been in the water sometime; the flesh was off the face, and it was not recognizable except they stated the body had on some clothing similar to that worn by deceased, such as his pants and shoes. They made no examination of the body, and appellant fastened a piece of iron, which he had brought along, to the body and sank it back into the water. According to appellant's confession, he killed McDonald by striking him in the head with an axe. They were going down the river in a wagon, McDonald driving. Appellant had his axe with him and struck McDonald two licks in the head, which caused his death. He then got his uncle Bill Follis, and together they threw McDonald's body into the river with a maul tied to it, which caused it to sink. He also stated about taking a watch and chain from the body of McDonald and burying it near a tree, which was subsequently found by the sheriff buried where appellant told him he would find it. The motive for the homicide, as appellant stated in his confession, was robbery; that is, his uncle was to get the property of McDonald, and he was to get one hundred dollars. It also appears that Dock Brunson was in the scheme; that either he (appellant) or Dock was to do the killing, as his uncle said they would not be suspected, while he would be. Appellant also states in his confession about getting some of the proceeds of McDonald's property, and about Brunson some of the horses. This is a sufficient statement of the case to discuss the assignments of error.

We will not discuss the application for continuance because the questions involved in this application are not likely to arise again. We would observe, however, that the court had a right to know whether appellant desired to wait for the witness, from whom he received a telegram, during the trial, that he had started for the trial; when appellant's counsel refused to state that he desired to wait for the

witness until the next day, the court had a right, as explained by him, to proceed in the absence of the witness.

We believe that the court properly received evidence of the confessions of appellant. These confessions came through the sheriff, and on a predicate laid by him, which does not appear to have been directly controverted by appellant. There was enough in the statement of the sheriff, however, to suggest a theory as to said confession not being a free and voluntary confession, notwithstanding the warning given appellant; and in such state of case, a charge should have been given to the jury on this subject; that is, some such charge as requested ·by appellant on this subject should have been given. We do not believe it was competent to prove what the sheriff and his deputy Grayson believed as to what would be done with appellant after he made a confession; that is, that he would be given immunity. They could testify as to all that was said and done in that connection either by themselves or the officers, but not as to what they believed would be done.

The charge of the court on accomplice testimony relates to the witnesses Bill Follis and Will Tom Follis. The court assumed in the charge that Bill Follis was an accomplice, which was correct, and submitted to the jury as to whether or not Will Tom Follis was an accomplice, which we also think was correct. This charge is lengthy and is more or less complicated, and we believe is subject to some of the criticisms indulged in by appellant. We call attention to that portion in connection with subdivision 18, which, at the conclusion, uses this language: "* * * but this does not mean that the confession of a defendant on trial cannot be looked to for corroboration of the testimony of an accomplice, when such confession is so corroborative and proven by other witnesses than an accomplice." This charge, it would appear, is on the weight of testimony.

The charge of the court with reference to the corpus delicti and the proof necessary thereto, is also complained of, and it is insisted that appellant's special charges on this subject should have been given. In this connection, it is further insisted that the evidence of the corpus delicti is not sufficient. Inasmuch as we believe the latter contention is well taken, we will discuss that question which will render a criticism of the charges given on this subject unnecessary. The corpus delicti, in a case of this character, consists in the establishment by evidence of the death of a human being by some criminal act or agency of another, and in this connection it may be stated, that our statute requires that "no person shall be convicted of any grade of homicide, unless the body of the deceased or portions of it are found and sufficiently identified to establish the fact of the death of the person charged to have been killed." See Kugadt v. State, 38 Texas Crim. Rep., 692, and Gay v. State, 42 Texas Crim. Rep., 450. It may be further stated that under our authorities the corpus delicti may be proven by the testimony of an accomplice corroborated by the

confession of the appellant, and vice versa. See Anderson v. State, 34 Texas Crim. Rep., 546, and Martin v. State, 36 Texas Crim. Rep., 632. In regard to the identification of the remains found in the river as that of Hamp McDonald, we have in evidence the disappearance of Hamp McDonald from that community, and we have the testimony, that is, the confession of appellant that he killed Hamp McDonald. This alone, without other evidence, would not be sufficient. If, however, this confession is corroborated by the testimony of Bill Follis and Will Tom Follis, or either of them, as to the identity of the remains found in the river being those of Hamp McDonald, this would be enough. On this point, all that we have is these two witnesses testify to seeing a dead body taken out of the river by appellant at the raft. They state that the body was disfigured, that is, decomposed, the face having sloughed off and they do not pretend to identify this body as that of Hamp McDonald from its size or personal appearance. They do, however, state that the shoes on this body had large eyelets, similar to those worn by McDonald, and that the pants were striped and looked like those they had seen him wear. Further than this, we fail to recall any circumstances of identification in regard to the clothing. They state in this connection, they took the body to be that of McDonald. Doubtless, under the circumstances, they very naturally believed it was. While testimony of this character has been held sufficient, in connection with other circumstances, to render the identification complete, still the evidence of identity is rather meager. Conceding, however, it may be adequate, what evidence have we to corroborate or support the confession as to criminal means or agency used to cause the death of the body? The indictment alleges that the death was caused in various ways. In one count, by being struck on the head with an axe or some blunt instrument, and being stabbed with a knife; and in another, by being drowned; and still in another, by some means to the grand jury unknown. Eliminating the last two counts, about which there is no proof, what about the first count? Appellant says by his confession, that he killed McDonald by striking him on the head with an axe; that after he had fallen from the wagon, he then stabbed him with his own knife, which he afterwards threw in the river. No witness speaks of any wound found on the body. It was not even examined in order to ascertain whether or not it showed any marks of violence. Can we presume if the body had been examined it would have shown that the skull was crushed? This would be to indulge a presumption against appellant, and, notwithstanding his alleged confession to this effect, we would not be authorized to indulge such a presumption against him. In the Anderson case, supra, we had the confession of appellant, in connection with the testimony of the accomplice, corroborating each other, and the accomplice testified to seeing the shooting, which killed the deceased; that he saw the dead body the next day and the wounds which had been inflicted on it by appellant the

night before. Some years after this, when the body of deceased was exhumed from the place where the accomplice helped appellant bury it; the skull was procured, and a bullet hole was found to be in same, and the bullet recovered. Not so here. The accomplices Bill Follis and Will Tom Follis did not see any violence inflicted by appellant on McDonald, nor did they testify to having seen any marks of violence when the body was taken from the river. In the Conde case, where the confession was complete, the court held that same was not corroborated, because no marks of violence were found on the body which was exhumed and which was identified as that of deceased. The body in that case was disinterred from a thicket where it had evidently been concealed, and the only indications of violence there was, as testified to by the witnesses, that they saw a bloody rag on deceased's face, but it was held that this blood might have come from other causes, and that there should have been some evidence of violence on the body before a conviction could be sustained. We do not believe that under the authorities with which we are familiar, that there was any evidence showing that the body found in the river came to its death by violence; certainly not by the manner of violence stated in the appellant's alleged confession.

We will notice one other assignment; that is, that which relates to the verdict. It appears from appellant's bill of exceptions on this subject that the jury returned into court with the following verdict: "We the jury find defendant guilty and assess his punishment at ninety-nine years in the penitentiary," whereupon the court told the clerk to pass the verdict to him, and informed the jury that the verdict was not correct. The court then wrote a verdict for the jury, as follows: "We, the jury find defendant guilty of murder in the first degree and assess his punishment at imprisonment in the penitentiary for life," and handed it to the foreman and had him sign same, and then had the verdict read, and asked the jury if they agreed and they all agreed to the verdict. This was all done in the court room in the presence of the court without sending the jury back to again deliberate on their verdict. This was improper, being a usurpation on the part of the court of the functions of the jury. The verdict which they brought in was not a verdict of murder in the first degree, that part of the verdict assessing the punishment clearly indicating that it was not. The court had no right to dictate to the jury, as appears to have been done, the verdict fixing the degree which they should find in the case; not only this, but assessing the amount of punishment,—indeed a radical change of the verdict which had been returned by the jury. For this error alone we would reverse this case. We would further observe that unless further proof, which it seems is not accessible, can be furnished by the State on another trial, that a re-trial would seem to be unnecessary. Appellant may be guilty, and evidently the circumstances look very suspicious against

him, but under the authorities the evidence of the: corpus delicti is not sufficient to support a verdict against appellant.

The judgment is accordingly reversed and the cause remanded.

*Reversed and remanded.*