Frank Jirou v. The State.

No. 4253. Decided February 26, 1908.

</div>

1.—Murder—Evidence—General Reputation of Deceased—Communicated and Uncommunicated Threats—Evidence.

Article 713, Penal Code, makes no distinction in the rule laid down authorizing the introduction of proof of deceased's reputation, between threats communicated or uncommunicated, nor would there seem to be any reason why, as to communicated threats, a different rule should obtain between cases where the threats were communicated to a defendant and believed by him, in a case where they were made to him by the deceased in person, and there was no error in such case to admit in evidence deceased's general reputation as a peaceful man, upon a trial for murder. Distinguishing Gregory v. State, 50 Texas Crim. Rep., 73; 94 S. W. Rep., 1041; Keith v. State, 50 Texas Crim. Rep., 63; 94 S. W. Rep., 1044. Approving Russell v. State, 11 Texas Crim. App., 288; Simms v. State, 38 Texas Crim. Rep., 462.

**2.—Same—Charge of Court—Manslaughter—Transport of Passion—Harmless**
     **·Error.**

Where upon trial for murder the issue of manslaughter was not in the case,
and the defendant was convicted of murder in the second degree, it was harmless
error in the court's instruction on manslaughter that the killing must occur in a
transport of passion, aroused by adequate cause, instead of simply charging pas-
sion.

**3.—Same—Murder—Self-Defense—Manslaughter.**

Where upon trial for murder, the facts made out for the State a straight case of
murder, and defendant's evidence raised the issue of self-defense alone, there was no
issue of manslaughter in the case and no charge on manslaughter was necessary.
See opinion for evidence which did not raise the issue of manslaughter.

**4.—Charge of Court—Self-Defense—Charge as Entirety—Appearance of Dan-**
     **ger—Defendant's Standpoint.**

Where upon trial for murder the evidence showed from the State's standpoint
an assassination, and defendant testified to recent threats by deceased and hostile
demonstrations when they met on the roadside, there being no eyewitnesses, and
the court instructed the jury on self-defense on actual and threatened attack,
according to the issues raised by the facts when the charge of the court was con-
sidered as an entirety, there was no merit in defendant's contention in singling
out an isolated portion of the charge on self-defense, because the court had not
instructed the jury therein on appearances of danger from defendant's standpoint,
but had charged on actual attack, and there was no error. Following Bryant v.
State, 47 S. W. Rep., 373.

Appeal from the District Court of Victoria. Tried below before
the Hon. James C. Wilson.

Appeal from a conviction of murder in the second degree; penalty,
forty years imprisonment in the penitentiary.

The opinion states the case. ·

*Daugherty & Daugherty, Joe L. Hill,* and *Dupree & Pool,* for appel-
lant.—On question of transport of passion, cited cases in opinion
and in addition: Manning v. State, 85 S. W. Rep., 1149; Harrison v.
State, 83 S. W. Rep., 699; Pettis v. State, 47 Texas Crim. Rep., 66;
81 S. W. Rep., 312; Earles v. State, 47 Texas Crim. Rep., 559; 94 S. W.
Rep., 464; St. Clair v. State, 49 Texas Crim. Rep., 479; 92 S. W. Rep.,
1095. On question of charge on self-defense: Swain v. State, 48
Texas Crim. Rep., 98; 86 S. W. Rep., 335; Stacy v. State, 48 Texas
Crim. Rep., 95, 86 S. W. Rep., 327; Lenz v. State, 48 Texas Crim. Rep.,
2; 85 S. W. Rep., 1068; Haroleson v. State, 85 S. W. Rep., 1071; Pur-
year v. State, 50 Texas Crim. Rep., 454; 98 S. W. Rep., 258; Wallace v.
State, 50 Texas Crim. Rep., 474; 97 S. W. Rep., 471; Pratt v. State,
86 S. W. Rep., 8; Arnwine v. State, 50 Texas Crim. Rep., 477; 96 S. W.
Rep., 4; Watson v. State, 50 Texas Crim. Rep., 171; 95 S. W. Rep., 115;
Newcomb v. State, 49 Texas Crim. Rep., 550; 95 S. W. Rep., 1048;
Thomas v. State, 49 Texas Crim. Rep., 633; 93 S. W. Rep., 111.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—Appellant was indicted in the District Court
of Refugio County for the murder of one D. A. McRea, Jr., alleged
to have been committed on the 18th day of September, 1903. The

case was carried to Victoria County on a change of venue, and on December 20, 1907, defendant was convicted, in said court, of murder in the second degree and his punishment assessed at forty years confinement in the penitentiary.

The record is a very voluminous one and contains intrinsic evidence that the case was stoutly contested, and that both sides were represented with great ability.

It appears briefly that D. A. McRea, Jr., was a ranchman, living with his family near the little village of St. Mary's, in Refugio County. At the date of his death he was a young man, some thirty-one years of age; and on the 16th day of September, he left his home to go to Blanconia, in Bee County, to see his father and mother, who were sick, leaving word with his wife that he would return on the following Friday; but if for any reason he was unable to make the journey home, that he would write her so that she would be advised as to his movements and whereabouts. Not returning, his wife sent Andrew Greenwood, a negro, to the post office, who did not return. Late in the evening, on Friday of September 18, 1903, the dead body of McRea was found by the side of the road shot to death. His body bore evidences of there having been two shots fired into it. There were some forty or fifty bullets which struck his neck, many of them finding lodgment in the vertebræ. The other wound was on the shoulder. The horse he was riding was found near his body, and was well identified by the testimony. Several witnesses who were practiced horsemen and had had a great deal of experience in outdoor and ranch life, testified they were able to trace the tracks of the horse he was riding for some distance from where his body was found, and could tell that the horse was traveling in an ordinary gait, walking until he reached a point close to where the body of the dead man lay, when all four of the horse's feet showed marks of being close together, and as in fright the horse wheeled and made a circle within which the dead body of McRea was found. It was shown that there were some mesquite bushes near the place where he was shot. Appellant was shown, by evidence other than his own, to have been at the place of the homicide; and testimony was introduced that some months after the killing, appellant had declared that he had killed deceased because deceased had murdered his father and brother, which last statement was shown to be untrue. There are many references by all the witnesses to various objects surrounding the place where the body of McRea was found. In the absence of a plat or map we probably do not gather the significance of all this testimony. It may suffice to state that taken together, it presents a strong case of assassination. Appellant became a witness in his own behalf on the trial, and admitted he killed McRea, but claimed that such killing was in his own necessary and proper self-defense. He also made proof of threats against him, both by his own testimony and by the testimony of other witnesses. In rebuttal the State introduced testimony of a number of witnesses as to the good

reputation of McRea as a peaceful, quiet and inoffensive citizen. This statement condensed from a very large record will probably be sufficient to illustrate the few questions on which alone counsel for appellant rely for a reversal. These questions are with admirable clearness condensed and are well presented in their brief.

It is contended, among other things, that the court erred under the facts of this case in permitting proof to be offered of the good reputation of McRea as a peaceful and quiet man. Article 713 of our Penal Code is, as follows: "Where a defendant accused of murder seeks to justify himself on the ground of threats against his own life, he may be permitted to introduce evidence of the threats made, but the same shall not be regarded as affording a justification for the offense, unless it be shown that at the time of the homicide the person killed, by some act then done manifested an intention to execute the threat so made. In every instance where proof of threats has been made it shall be competent to introduce evidence of the general character of the deceased. Such evidence shall extend only to an inquiry as to whether the deceased was a man of violent or dangerous character, or a man of kind and inoffensive disposition, or whether he was such a person as might reasonably be expected to execute a threat made." The introduction of evidence such as is complained of in this case has frequently been upheld by this court. See Russell v. State, 11 Texas Crim. App., 288; Sims v. State, 38 Texas Crim. Rep., 462, and Graves v. State, 14 Texas Crim. App., 113. Counsel for appellant very candidly recognize and admit the general rule; but they insist that the ordinary rule in such cases does not apply, and should not apply to the facts of this case, for the reason that the threats of the deceased, which were introduced in evidence upon the trial of this case, were made by him in person to appellant. In support of this contention, appellant's counsel refer to the cases of Gregory v. State, 50 Texas Crim. Rep., 73; 94 S. W. Rep., 1041, and Keith v. State, 50 Texas Crim. Rep., 63, 94 S. W. Rep., 1044. Those cases are easily distinguishable from the case here being considered. In the case first cited the accused claimed that he shot the deceased on finding him in a compromising attitude with his wife, and offered positive testimony that deceased had debauched his wife. In rebuttal it was proposed to prove the general reputation of the deceased for chastity and virtue. In passing on that question, the court say: "This did not justify the State to resort to evidence of the general reputation of the deceased as to virtue and chastity. The state could not thus meet this proof by positive evidence with proof of general reputation, and would be only authorized to introduce evidence of the general reputation of deceased when appellant himself had first assailed the State's case by proof of general reputation." In the other case cited there was no issue of threats in the case. The statute makes no distinction in the rule laid down authorizing the introduction of proof of deceased's reputation, between threats communicated or uncommunicated, nor would there seem to be any

reason why, as to communicated threats, a different rule should obtain between cases where the threats were communicated to a defendant and believed by him, in a case where they were made to him by the deceased in person. To sustain appellant's contention we would have to ingraft an exception on the statute, which the statute itself has not made. We think, therefore, that this proof under the statute and decisions was clearly admissible.

Complaint is made that the charge of the trial court on the subject of manslaughter was érroneous, and it is claimed that same furnishes ground for reversal of the case. The charge of the court complained of is as follows: "If you believe from the evidence, beyond a reasonable doubt, that the defendant, with a deadly weapon, or instrument · reasonably calculated and likely to produce death, by the mode and manner of its use, in a sudden transport of passion aroused by adequate cause, as the same is herein explained, and not in defense of himself against an unlawful attack reasonably producing a rational fear or expectation of death or serious bodily injury, did shoot with a gun and thereby kill D. A. McRea, Jr., the deceased, as charged in the indictment, you will find the defendant guilty of manslaughter, and assess his punishment at confinement in the State penitentiary for any term of not less than two nor more than five years." It is insisted that this charge is erroneous, in that, it required the jury to believe before they could convict defendant of manslaughter that the killing must occur in a *transport of passion* aroused by adequate cause. It is contended·that the court had no right to interpolate the word "transport" in that connection: inasmuch as the statute does not so define manslaughter; and because the word "transport" intensifies the "passion and indicates that the defendant must be possessed of a fury of passion before the offense can be reduced to manslaughter." It is claimed also that the court erred in the use of the words "reasonable and rational" in this charge, because the use of these two words are improper qualifications of the right of self-defense, which right should be viewed from the defendant's standpoint. In support of the error here assigned, we are referred to the following cases, among others: Clark v. State, 51 Texas Crim. Rep., 519; 102 S. W. Rep., 1136, and Kannmacher v. State, 51 Texas Crim. Rep., 118; 101 S. W. Rep., 242. As stated by counsel for appellant in their brief, the charge of the court on manslaughter is almost in the exact words of the charge condemned by this court in the Kannmacher case, 51 Texas Crim. Rep., 118; 101 S. W. Rep., 242, which is referred to with· approval in Clark v. State, 51 Texas Crim., Rep., 519; 102 S. W. Rep., 1136. That the charge of the court on this subject, tested by the rule laid down in the Clark and Kannmacher cases, is subject to serious criticism, does not admit of any doubt. We do not think, however, it important to inquire or determine what·effect the giving of this charge in this case should have, for the reason that we do not believe that manslaughter is in the case, or that the court should have

charged on the subject of manslaughter. Many of the decisions of this court, if not carefully analyzed, would tend to suggest the idea that manslaughter is in every homicide case in which the issue of self-defense is raised by the testimony. The court, it seems to the writer (in which Judge Brooks agrees), has gone very far to justify this inference; that this, however, is not correct legal principle we think is clear. As applied to the facts of this case, it seems manifest to us that there were substantially two issues in it. On the part of the State there was made a strong case of wilful murder; on the part of the appellant, there was, if believed, a clear case of self-defense. It could not, of course, be both. It must be one or the other. It seems to us that the language of Judge Brooks, in the case of Lenz v. State, 48 Texas Crim. Rep., 2; 85 S. W. Rep., 1068, applies with peculiar force here. In that case the court say: "Appellant's second insistence is, that the court erred in not charging on the law of manslaughter. From the State's testimony the issue of manslaughter is not presented. Appellant's testimony makes out a case of perfect self-defense, while the State's testimony shows an unprovoked killing upon a grossly inadequate cause: in fact, no cause at all."

In order to understand appellant's account of the homicide, and to give him the benefit of a full and fair statement of it, it needs to be stated that he (appellant) had proved by himself and by at least two other witnesses, threats by McRea against him, ending with the statement that the next time they met he (appellant) had better be fixed, and that in reply, appellant said to deceased, "All right, I will try to meet you on equal terms." Again, appellant says that, in parting from the deceased, a few days before the homicide, and at the time of the making of the threats in question, deceased shook his finger at him, and stated: "Now, God damn you, don't forget what I told you. You had better be fixed the next time we meet. If I catch you off the public road, I will give you a damned good quirting." The evidence shows that McRea was a much larger man than appellant. Appellant was somewhat crippled, though he had been on the police force for sometime at Beaumont, and was somewhat expert in the use of firearms. On the evening of the homicide, according to appellant's testimony, and that of his father-in-law, he had left the latter's place, taking with him a shotgun, with the statement that he was going out hunting. He says, just before he became aware of the presence of McRea, that he was going somewhat stooped over to where some birds were, and when he got about close enough to shoot, he stopped. His account further of the killing is, in these words: "I was just in the act of shooting the birds in this position when somebody spoke to me and I recognized the voice as being McRea's voice, and his words, 'Now, damn you, we will have it out,' or 'Now, God damn you, we will have it out.' I will not be positive whether he said "Damn you' or 'God damn you'; one of the two things. I recognized his voice, and saying what he did, I wheeled and went to shooting, because I expected

him to go to shooting. I only had to whirl around to shoot, and I fired two shots as quickly as I could. When I whirled round I saw the deceased. He was immediately in front of me. When I turned we were facing each other. He was riding at the time. It all happened very quickly. From what I could see he had his right hand down on his right-hand side. I did not see him have hold of anything." On his cross-examination he was contradicted in respect to some matters that probably had some weight with the jury. He states, in direct examination, that when deceased spoke to him he had both barrels of his gun cocked. He says further, in substance, that when he turned around, that deceased was on horseback and immediately in front of him and sitting bolt upright and at a distance of some fifteen or eighteen feet. It was shown that on the former trial of the case, that he had testified that at the time he turned around, and shot deceased, the deceased was leaning forward. On cross-examination when asked about the condition of the horse's head, which it might have seemed would have been in the way of his shooting the deceased where he was shot, he makes this statement: "At this time (meaning right at the time he was shot) the horse moved his head slightly to the right. I do not know anything about the intelligence of the horse. I do not think that the horse knew anything about standing with his breast right to me and his head turned to the right, so as to give me a square shot at the man on him. The horse just happened to have his head that way. The horse's breast was to me. He moved his head to the right." Now, can it be fairly said, in the light of this testimony, that there was anything in the record to raise the issue of manslaughter? We do not think so; and, therefore, deem it unnecessary to decide and determine the assignments presenting the error in the court's charge on this subject.

Again, complaint is made of the following portion of the court's charge. "If from the evidence you believe that the defendant killed the said D. A. McRea, Jr., but you further believe that at the time of so doing the deceased had made an attack on him, which from the manner and character of it and the relative strength of. the parties, and the defendant's knowledge of the character and disposition of the deceased, caused him to have a reasonable expectation or fear of death or serious bodily injury, and that acting under such reasonable expectation or fear, the defendant killed the deceased, then you should acquit him." This portion of the court's charge is claimed to be erroneous and hurtful, for the reason that, as claimed, the jury were required to believe that the deceased D. A. McRea, Jr., had made an attack upon the defendant, and in this connection failed to instruct the jury that whether the danger was real or not, if it appeared to the defendant that his life was in danger from the acts and conduct of the deceased, then he had the right to act in his own self-defense as long as this appearance of danger existed in his mind, even to the taking of the life of the deceased.

Complaint is also made that the court erred in his charge to the jury, wherein they were instructed as follows: "And you are instructed, that the defendant would not be justified in taking the life of the deceased on account of such circumstances, unless you believe that the deceased by some act or word then done or said by him manifested an intention to execute such threats, and if the deceased made any threats against the life of defendant or to do him serious bodily injury, and if at the time of the killing of deceased, his acts and conduct or his acts coupled with his words, if any, were reasonably calculated to create in the mind of the defendant, and did create in his mind a belief that the deceased was then and there about to execute such threats, by inflicting upon the defendant death or some serious bodily injury, then under such circumstances the defendant would have the right to shoot and kill the deceased to protect himself against such threatened danger, if any." The vice, as claimed in this charge, is that it required the jury to believe that the acts and conduct of the deceased were reasonably calculated to create in the mind of the defendant a belief that the deceased was about to execute such threat before the defendant could act in his own defense, and because the impending danger of the defendant, by the acts of the deceaseed, was to be viewed by the jury and considered from the standpoint, and not from the view point of the defendant. In this connection counsel for appellant further say, the law does not require actual attempt to execute a threat before the demonstration to execute the threat can be relied upon by the defendant; and because any act of the deceased which the accused may have believed evidenced an intent to carry his threat into execution would be a basis for action on the theory of self-defense. The charge is further asserted to be erroneous, because, as claimed, by said charge the jury were required to find that the deceased made an attempt to execute his threats, and this attempt, in connection with the general charge, required the jury to believe that the deceased made an attempt to execute his threats by the use of a deadly weapon. The case of Bryant v. State, 47 S. W. Rep., 373, clearly states an old and well settled rule, which should never be overlooked; but always applied in passing on the charges of inferior courts. Judge Henderson there says: "With reference to this charge on self-defense, we would further observe that it is not a fair method of criticism, as indulged in by appellant, to take up and discuss isolated portions of the charge, when the charge, viewed as a whole, fairly covers every issue in the case." The issues as well as the charge in the Bryant case are very much like the case before us, and the charge here seems to be in substantial accord with that upheld in that case. In this case, responsive to the issues raised, the court charged the jury, as follows: "Every person is permitted by law to defend himself against any unlawful attack, reasonably threatening injury to his person, and is justified in using all necessary and reasonable force to defend himself, but no more than the circumstances reasonably indi-

cate to be necessary. Homicide is justified by law when committed in defense of one's person against any unlawful and violent attack, made in such a manner as to produce a reasonable expectation of death or some serious bodily injury.

"You are instructed that reasonable apprehension of death or great bodily injury will excuse a party in using all necessary force to protect his life or person, and it is not necessary that there should be actual danger provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time, and in such case the party acting under such real or apparent danger is in no event bound to retreat in order to avoid the necessity of killing his assailant.

"If you believe that at the time of the killing, the deceased by his acts and conduct, or by his acts coupled with his words, if any, reasonably induced the defendant to believe that he was about to attack the defendant with a deadly weapon, which would probably cause the defendant's death or some serious bodily injury; or if the acts of the deceased or his acts coupled with his words, if any, reasonably appeared to the defendant at the time, from the defendant's standpoint, that the deceased was then about to attack him, defendant, with a deadly weapon, and if the same were reasonably calculated to create in the mind of the defendant, and did create in his mind a reasonable expectation or fear of death or of some serious bodily injury, and you further believe that the defendant then and there moved and actuated by such reasonable expectation or fear of death or serious bodily injury, if any, shot and killed the deceased, then, under such circumstances the same would be in his lawful self-defense and, if you so believe from the evidence, you will acquit the defendant.

"If you believe from the evidence that the deceased made any threats against the defendant, you may take such threats, if any, into consideration in determining the intent with which the defendant acted from his standpoint at the time of the killing, from all the surrounding facts and circumstances, and if you find that the defendant killed the deceased, then, in justification of such killing, you may consider evidence of threats, if any, made by the deceased against the life of the defendant, or to do him some serious bodily injury; but you are instructed that the defendant would not be justified in taking the life of the deceased on account of such threats, unless you believe that the deceased, by some act or words, then done or said by him, manifested an intention to execute such threats, and if the deceased made any threats against the life of the defendant, or to do him serious bodily injury, and if, at the time of the killing of deceased, his acts and conduct, or his acts coupled with his words, if any, were reasonably calculated to create in the mind of the defendant, and did create in his mind, a belief that the deceased was then and there about to execute such threats, by inflicting on the defendant death or some serious bodily injury, then under such circumstances the defendant would have the

right to shoot and kill the deceased to protect himself against such threatened danger, if any, as it reasonably appeared to defendant, from his standpoint at the time, and if you so believe from the evidence you will acquit the defendant.

"In determining whether the defendant acted in what reasonably appeared to him to be in his necessary self-defense, it is the duty of the jury to look at the transaction from what you believe from the evidence was the standpoint of the defendant at the time, and consider the same in the light of the facts and circumstances, as you believe they appeared to the defendant at the time, and not from any other standpoint; but it is for the jury to determine from the evidence what were the appearances of the defendant, and what the standpoint of the defendant was, and in what light he, in fact, did view the facts and circumstances at the time." We approve this charge as being a correct enunciation of the law of self-defense as applied to the facts of this case. Tested by this charge, and in the light of the evidence, of which we have given a brief summary, the jury could not have been mistaken, we think, as to the law of self-defense. In this connection, it should be stated, that at the time of his death, the deceased was unarmed and was in his shirt sleeves. There was ample room, in view of the State's case, and testing appellant's contention, that an unarmed man came up within a few feet of him when he could see that he had a double barreled shotgun in his hands, with both barrels cocked, against which he had no protection except in flight, to find against appellant's contention and all the facts, might well cause the jury to hesitate in sustaining, under such circumstances, a plea of self-defense.

We have carefully gone over the entire record, in the light of appellant's brief, and have given the same patient and careful attention. We believe there is no error in the record of which appellant could complain; and that the judgment of the court below should be affirmed, and it is hereby in all things affirmed.

*Affirmed.*