## EDMUND SHELTON v̇. THE STATE.

### No. 4124.   Decided November 25, 1908.

**1.—Murder—Evidence—Bill of Exceptions.**

Where upon appeal from a conviction of murder the bill of exceptions failed to show what the answer of the witness would have been to which the State interposed objection; and did not show how the rejected testimony was relevant the same could not be considered.

**2.—Same—Charge of Court—Manslaughter.**

Where upon trial for murder the evidence did not raise the issue of manslaughter, but either made a case of murder or self-defense, the court was not required to submit manslaughter to the jury; and this although the evidence raised the question of self-defense. Following Jirou v. State, 53 Texas Crim. Rep., 18.

**3.—Same—Charge of Court—Threats.**

Upon trial for murder where the issue of threats arose from the evidence, and the charge of the court upon this issue was to the effect that by some act or words it reasonably appeared to defendant that said threat was about to be executed, the same while a little inartistically drawn, substantially followed the statute, and was not misleading, or calculated to confuse the minds of the jury.

**4.—Same—Practice on Appeal.**

Where upon appeal from a conviction of murder the complaint was that the charge of the court was too general and uncertain and was well calculated to confuse and mislead the jury, the exception could not be considered, as it failed to point out in what way the charge was objectionable.

**5.—Same—Sufficiency of Evidence—Death Penalty.**

Upon appeal from a conviction of murder in the first degree assessing the death penalty, where the evidence showed a most cruel and wanton murder, the verdict will not be disturbed.

Appeal from the Criminal District Court of Galveston. Tried below before the Hon. J. K. P. Gillaspie.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case.

No brief on file for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—This is an appeal from a conviction for murder in the first degree with the death penalty assessed.

If the testimony for the State is to be believed the killing of Ephram Bass was a most heartless and cold blooded killing. On the part of the State, the facts show that about 5 o'clock p. m. of the 14th of October, 1907, on the public streets of the city of Galveston, the appellant walked out of an alley on to Thirtieth Street and Avenue M with a pistol in his hand, walked up to the deceased, Ephram Bass, and when he did so the deceased threw up his hands and requested defendant not to shoot him. The deceased was unarmed and as he threw up his hand, asked the appellant not to shoot him, and started to run; the appellant shot him in the side of the head, the deceased fell, when the appellant walked up to him and fired three more shots into his body and deliberately walked off and stated, "Well, I got him and I guess that will hold him for awhile." Shortly before this killing, the State's witness Frank Williams was driving down the street in his buggy and when he reached a point on Forty-second and Winnie Streets, his buggy broke down and he called to appellant who was standing close by to come and assist him. The appellant declined and he stated that he had to be up at Thirtieth Street by 5 o'clock p. m., that he was going to kill old Ephram and walked on off It was proved by one of the State's witnesses by the name of General Murchison that a short while before the killing he had a conversation with the appellant in which he told the witness that Ephram Bass and he had had some trouble and that Ephram Bass had made some threats against him about that woman; that the woman was sick in the hospital and that when she gets out of the hospital and gets well he was going back to her and if Ephram interfered with him he would kill him. The woman mentioned went by the name of Hattie Boyd, or Hattie Bass, and she and the deceased were living together as man and wife. The appellant seems to have been infatuated with this woman and evidently had been advised that Ephram Bass suspected it. The appellant proved by the witness Mary Dorsey that she heard Ephram Bass on three or four different occasions talk about appellant in which Ephram told her that he intended to kill appellant and in the conversation further told her that he suspected Shelton, the appellant, with being intimate with his wife. The appellant took the stand and testified to a case of self-defense and claimed that when he shot the deceased that the deceased had made a demonstration as if to draw a weapon and said to me, "Shoot, you son-of-a-bitch, I am going to kill you." The appellant further testified that the deceased kept on making the same kind of a motion after he, appellant, fired the first shot. "I knew up to the time that he made the motion

that he was entirely harmless, but he was making me believe that he had something when I made the first shot, and he ought to have had sense enough to say he didn't have anything. If he had had anything he had time enough to draw forty guns between the time I fired the first shot and the time I fired the second shot, and he made the statement, 'Shoot, you son-of-a-bitch, I am going to kill you.' I shot four times and I walked off; I don't know how many times I hit him and I didn't look back after I started off." The appellant further testified that the deceased had threatened to kill him and was going to kill him on that evening.

The court submitted the case to the jury on the issues of murder in the first and second degrees and on self-defense, omitting to charge the jury on manslaughter.

1. We find in the record but one bill of exceptions which is as follows: "Be it remembered that upon the trial of the above numbered and styled cause, when the witness Richard Murphy was on the stand as a witness and was being interrogated by the defendant, witness was asked by counsel for defendant, the following question, to wit: 'Would he (meaning the witness Frank Williams) had to have been talking loud for you to hear it?' To which the State objected because the question called for a conclusion of the witness and not a fact, which objection the court sustained, to which ruling of the court the defendant then and there excepted, and here and now tenders this his bill of exceptions. No. 1, and prays that the same be approved by the court and ordered filed among the papers of said cause as a part of the record thereof." We are of opinion that this bill of exceptions is defective on two grounds, first, it fails to show what the answer of the witness would have been, and, second, it does not appear from the bill of exceptions how this testimony was relevant. The rule is that unless the question in itself suggests its relevancy, then so much of the record must be set out in the bill as will show how the question would become relevant. Under the long established rule of this court we will not search through the record to try and find out how and in what particular certain testimony is relevant. The bill must be perfect in itself.

2. Appellant in his motion for new trial, in his third ground of the motion, complains that the court erred in not giving in charge to the jury the law of manslaughter for the reason that the issue of manslaughter was raised by the evidence. We have carefully gone over the testimony in this case and we have been unable to find anything in the record that would suggest a charge on manslaughter. The State's testimony makes out a case of murder. The appellant's testimony makes out a case of self-defense. It has been the long established rule of this court that the trial court should never submit an issue to the jury that is not called for by the facts of the case. Simply because self-defense was raised by appellant's testimony, it

does not necessarily follow that manslaughter is in the case. In Jirou v. State, 53 Texas Crim. Rep., 18; 108 S. W., 665, this court says: "Many of the decisions of this court if not carefully analyzed, would tend to suggest the idea that manslaughter is in every homicide case in which the issue of self-defense is raised by the testimony. That this, however, is not a correct legal principle, we think, is clear. As applied to the facts of this case it seems manifest to us that there were substantially two issues in it. On the part of the State there was made a strong case of wilful murder. On the part of the appellant, there was, if believed, a clear case of self-defense. It could not, of course, be both. It must be one or the other." See also the case of Lenz v. State, 48 Texas Crim. Rep., 2, 85 S. W., 1068. We therefore hold that the court did not err in failing to submit the issue of manslaughter.

3. The twelfth ground of the motion for new trial is because the court erred in that part of his charge relating to the threats made by the deceased against the defendant, because said charge, as a whole, is too general in its nature and terms, and is confusing and misleading to the jury, and required the jury to find that the deceased was about to execute all the threats testified about, and that the defendant had to believe that all of such threats were about to be executed, before he would have a right to shoot the deceased. The charge of the court on the subject of threats is as follows: "If you should find and believe from the evidence he, the defendant, did shoot said Ephram Bass with a pistol and thereby kill him, but you should further find and believe from the evidence that prior thereto said Ephram Bass had made a threat to kill said defendant, Edmund Shelton, and that said Ephram Bass by some act or word at the time he did so shoot and kill said Ephram Bass it reasonably appeared to him, the said defendant, that said threat was then about to be executed, and it then and there reasonably appeared to him, the said defendant, that said Ephram Bass was about to kill, or seriously injure him, and he, so believing, shot and killed said Ephram Bass, then and in that event if you so find, or if you have a reasonable doubt thereof, find him not guilty." Now the complaint to this charge is, first, that it, as a whole, is too general in its nature and terms and is confusing and misleading to the jury and required the jury to find that deceased was about to execute all the threats testified about before he would have a right to shoot. We are somewhat at a loss to know exactly what the appellant was aiming at in these objections. In what particular the charge is defective, the objection fails to point out. This court will not revise errors in a charge unless the errors are pointed out in the motion for new trial. To say that the charge is indefinite, or too restrictive, or too general in its terms, will not suffice. The charge is not susceptible to the criticism made that it required the deceased to execute all the threats made, while the proof shows there was only one kind of threat made and that was

the threat to kill, and that said charge is confusing and misleading and too general in its nature, the motion fails to advise us how or in what manner it is misleading and confusing. The court directed the jury that if the deceased had made threats to take the appellant's life, and at the time did some act which made it reasonably appear to appellant that he was about to execute the threat, that he had a right to kill. And while the charge does not use the language of the statute, which is always best to do, and is a little inartistically drawn, yet, it substantially follows the statute. The statute says by some act then done manifesting an intention to carry the threat into execution, the defendant could kill, while this charge says by some act or words it reasonably appeared to him that said threat was about to be executed. We think this charge was not misleading, or calculated to confuse the minds of the jury.

4. The next ground of the motion for new trial is, because the court's charge to the jury is too general and uncertain in its terms and is well calculated to confuse and mislead the jury. This ground can not be considered by the court. It fails to point out in what way the charge is too general or uncertain in its terms.

5. The fifteenth ground of the motion is, that the verdict of the jury is contrary to the law and not supported by the evidence. In view of the fact that the jury assessed the extreme penalty of the law, we have given particular attention to the testimony and are of the opinion that the appellant has had a fair and an impartial trial; that if the testimony for the State is to be believed, and we find nothing in the record that would reflect upon the credibility of the witnesses for the State, this was a most cruel and wanton murder, and we would feel unauthorized in the absence of some substantial reason to set aside the verdict of twelve impartial men, selected under the terms and requirements of the law, to pass upon the guilt or innocence of this man. They have thought fit to mete out to the appellant the death penalty. We can not disturb the verdict, and believing the appellant has had a fair trial we have nothing to do but affirm the judgment, which is accordingly done.

*Affirmed.*

[Rehearing denied.—Reporter.]