FRANK RICHARDSON v. THE STATE.

No. 7293. Decided March 7, 1923.

Rehearing Denied June 13, 1923.

**1.—Murder—Acts of Third Parties—Practice on Appeal.**

Where, upon trial of murder, complaint was made of the refusal of defendant's request that the jury be retired while the aged mother of defendant and deceased, a witness for the State, was being assisted to and from the ·witness stand during the trial of the case, *held*, that there was no reversible error in the instant case in the absence of an affirmative showing of injury, or a flagrant abuse of discretion of the lower court.

**2.—Same—Evidence—Reputation of Deceased.**

Where defendant objected to the proof of the good reputation of deceased on the ground that it was immaterial, irrelevant and prejudicial, and that deceased had been away on a prolonged absence until a few months prior to the homicide, and that the witnesses could not therefore have formed an opinion provable in court, and that beside there was no proof of communication of threats to the defendant, which bill of exception was qualified by the court, *held* that there was no reversible error.

### 3.—Same—Reputation of Deceased—Communicated Threats—Rule Stated.

The statute makes no distinction in the rule laid down authorizing the introduction of proof of deceased's reputation, between threats communicated or uncommunicated, nor would there seem to be any reason why, as to communicated threats, a different rule should obtain between cases where the threats were communicated to a defendant and believed by him, in a case where they were made to him by the deceased in person. Following Jirou v. State, 53 Texas Crim. Rep., 18 and other cases. Qualifying Arnwine v. State, 50 Texas Crim. Rep., 254.

### 4.—Same—Charge of Court—Deadly Weapon—Presumption.

Where, upon trial of murder, the court instructed the jury that if they found and believed from the evidence that at the time the defendant shot and killed the deceased, if he did, that the decease had a pistol in his hand, under circumstances which reasonably indicated an intention to murder or to inflict serious bodily injury upon him, then the law presumed and the jury should presume that the deceased intended to murder or to inflict serious bodily injury upon the defendant, there was no reversible error. Following Kendall v. State, 8 Texas Crim. Rep., 569.

### 5.—Same—Charge of Court—Function of Jury—Rule Stated.

Where, upon trial of murder, the court instructed the jury that they are the exclusive judges of the facts and the weight of the testimony, the contention that in the instant case, and where the law of Article 1106, P. C. may be demanded, the charge ought to instruct the jury that where the law creates certain presumptions arising from facts, the jury are not the exclusive judges of the facts, is untenable.

### 6.—Same—Sufficiency of the Evidence.

Where, upon appeal from a conviction of murder, the evidence sustained the same, there is no reversible error.

### 7.—Same—Rehearing—Reputation of Deceased—Communicated Threats.

Where defendant admitted the homicide, and endeavored to excuse it upon the ground of self-defense by introducing evidence of an attack or an apparent attack upon him by deceased at the time deceased was killed, and that prior thereto he had made threats to kill or do injury to the person of the defendant, it was competent for the State to meet such testimony by evidence of the reputation of deceased for peace, etc.

### 8.—Same—Communicated Threats—Statutes Construed.

The first paragraph of the statute doubtless is restricted to communicated threats, the other subdivision, however, is general in its scope and appears unrestricted in the statement that in every case where proof of threats has been made, it shall be competent to introduce evidence of the general character of the deceased, and includes uncommunicated threats.

### 9.—Same—Question to Witness—General Reputation of Deceased.

The question to the witness as to the general reputation for peace and quietude of the deceased was framed in language often found approved in the reports, and there was no error.

### 10.—Same—General Reputation—General Character.

Where it is contended that the words "general character" are distinguished from and do not mean the same as "general reputation," *held* that these terms should not be given such limited meaning.

**11.—Same—Charge of Court—Deadly Weapon.**

Where the charge of the court submitting the law touching the use of a deadly weapon was critized in that it contained the words "under circumstances which reasonably indicated an intention to murder or inflict serious bodily injury upon him" as an undue restriction upon the right of the jury to apply the legal presumption intended by Article 1106, P. C., *held* that inasmuch as the court told the jury to acquit if, from the words or acts of the deceased, etc., it reasonably appeared to defendant that he was in danger of death or serious bodily harm. (Following Gunn v. State—recently decided). There was no reversible error under Article 743, C. C. P.

Appeal from the District Court of Van Zandt.    Tried below before the Honorable Joel R._ Bond.

Appeal from a conviction of murder; penalty, thirty-five years imprisonment in the penitentiary.

Opinion states the case.

*Gentry & Gentry, Stanford, Sanders & West, Chas. L. Hubbard,* and *E. M. Greer,* for appellant.—On question of communicated threats: Berry v. State, 163 S. W. Rep., 964, and cases cited in opinion.

*R. G. Storey,* Assistant Attorney General, and *Butler, Price & Maynor,* for the State.—On question of communicated threats; cited Jirou v. State, 108 S. W. Rep., 655, and cases cited in opinion.

On question of reputation of deceased: Irby v. State, 155 S. W. Rep., 544, and cases cited in opinion.

On question of presumption of deadly weapon: Mason v. State, 228 S. W. Rep., 952, and cases cited in opinion.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Van Zandt County of murder, and his punishment fixed at thirty years in the penitentiary.

Serious complaint is made of the refusal of appellant's request that the jury be retired while the aged mother of appellant and deceased, a witness for the State, was being assisted to and from the witness stand, during the trial of this case. The matter is made the subject of a bill of exceptions in which it is made to appear that said witness was aged and infirm and that it was apparently necessary that she be assisted to and from the witness stand, and that in fact she was brought into the court-room and to the witness box and assisted in leaving same, by two deputy sheriffs. This court does not know how to properly appraise a complaint such as this. Necessarily large discretion is confided in trial courts in matters of procedure, and in order to call same into review by us on appeal, it seems universally held that there must be an affirmative showing of injury, or a flagrant abuse of the discretion of the lower court. We

have been unable to find any authority holding upon the same or a similar state of facts that injury must be inferred from a refusal such as this. While the trial court might have well granted the request of appellant and thus avoided any possible claim of injury, we are not able to conclude that his refusal of such request was a violation of the rights of the appellant from which reversible error appears.

A number of witnesses for the State were permitted to testify over objection of appellant that the reputation of deceased for peace and quietude was good. All the bills of exception complaining of this matter will be considered together. The record before us shows proof of threats made by deceased, immediately preceding the homicide and also prior thereto. Appellant's witness Steele swore that just before the shooting occurred appellant asked deceased what he was doing at the house and that deceased replied, "I will show you what I am doing here," and that he went and procured and presented a pistol, and then called out to the mother of himself and appellant, "Move Ma, and I will show him what I am doing here." That in a minute or two appellant shot and killed deceased. Other witnesses, including Charles Jones, Alto Jones, one Marmar and Hon. N. A. Gentry, all testified to threats made by deceased at other times, no proof appearing of the communication of these prior threats. Appellant objected to the proof of the good reputation of deceased on the ground that it was immaterial, irrelevant and prejudicial and bore on no issue in the case, and that deceased had been away from the county on a prolonged absence until a few months prior to the homicide, and that the witnesses could not therefore have formed an opinion provable in court. The bill of exceptions as presented to the trial court contained the further ground of objection that there was no proof of communication of threats to appellant. The trial court refused to approve the bill with this statement in it, and appends thereto a qualification in which he states that no objection was offered on the ground that the threats had not been communicated.

That the deceased had only been back at his old home for a few months following a prolonged absence of several years, would not seem good ground for the rejection of testimony of witnesses who qualified that they knew his general reputation for being a peaceable, law-abiding citizen and that it was good, but would seem rather to go to the weight of such testimony. Objections that the testimony is immaterial and irrelevant, are too general. There are numerous decisions holding that this court will judge of the action of the trial court in rejecting or admitting testimony, from the standpoint of the objections made, and not from the standpoint of objections which might have been made but were not. Fluewellian v. State, 59 Texas Crim. Rep., 334, 128 S. W. Rep. 622; Ward v. State, 66 Texas

Crim. Rep., 313, 146 S. W. Rep., 931; Irby v. State, 69 Texas Crim. Rep. 619, 155 S. W. Rep., 544.

If the objection was specific enough, we still doubt the application and soundness of the rule sought to be invoked by appellant, that is, that evidence of the good character of the deceased will not be admitted except where the proof shows communicated threats. The only case in which the doctrine is directly held is Arnwine v. State, 50 Texas Crim. Rep. 254. In a companion case, Arnwine v. State, 50 Texas Crim. Rep. 477, the correctness of this holding as announced in the prior and companion case, was vigorously assaulted. We have searched in vain for authorities approving the holding in the first Arnwine case. In Jirou v. State, 53 Texas Crim. Rep. 18, while this court was graced by the presence of the eminent jurist who wrote the opinion in the first Arnwine case, this court, speaking through Judge Ramsey, after quoting the statute, Art. 1143 Vernon's P. C., (then Art. 713 P. C.), says:

"The statute makes no distinction in the rule laid down authorizing the introduction of proof of deceased's reputation, between threats communicated or uncommunicated, nor would there seem to be any reason why, as to communicated threats, a different rule should obtain between cases where the threats were communicated to a defendant and believed by him, in a case where they were made to him by the deceased in person. To sustain appellant's contention we would have to ingraft an exception on the statute, which the statute itself has not made. We think, therefore, that this proof under the statute and decisions was clearly admissible."

The Jirou case is approved in Cannon v. State, 59 Texas Crim. Rep., 407, in an opinion written by the learned judge who wrote in the first Arnwine case; also in Williams v. State, 61 Texas Crim. Rep. 364, the same learned judge affirms the admissibility of similar evidence and makes no reference to the Arnwine decision. Reference to the three authorities cited in the first Arnwine decision, supra, and an examination of them raises doubt of their applicability. Rhea v. State, 37 Texas Crim. Rep. 138, and Sims v. State, 38 Texas Crim. Rep. 637, two of the cases cited in the Arnwine opinion, were both written by Judge Henderson, and neither of them lay down the rule that evidence of the good reputation of deceased will not be admitted except in cases of communicated threats, nor do we think either of them to contain any expression tending to support said conclusion. In the instant case appellant proved by his witness Steele a threat apparently accompanied by a demonstration on the part of deceased, immediately preceding the killing, and also introduced the testimony of several other witnesses of uncommunicated threats preceding the killing. Proof of prior threats has always been held admissible in cases of self-defense. If accompanied or followed by testimony of a demonstration on the part of deceased, such evidence may afford

justification for the killing. If the issue be as to who began the difficulty in a case wherein self-defense is set up, proof of uncommunicated threats is held to aid in solving the issue. The statute makes no distinction between the admissibility of such testimony in a case of communicated and one of uncommunicated threats. The plain, pointed and unequivocal terms of Article 1143, supra, are as follows: ''In every instance where proof of threats has been made, it shall be competent to introduce evidence of the general character of the deceased.'' When the language used in a statute is not plain or its meaning not clear, resort may be had to rules of construction; but when it is plain the courts have no right to add to or take from the statutory utterance its unmistakable meaning. The admission of the testimony as to the general character of deceased was not erroneous.

In the charge of the court appears the following:

''You are further instructed that if you find and believe from the evidence that at the time the defendant shot and killed the deceased, if he did, that the deceased had a pistol in his hand, under circumstances which reasonably indicated an intention to murder or to inflict serious bodily injury upon him, then the law presumes and you shall presume that the deceased intended to murder or to inflict serious bodily injury upon the defendant.''

It is urged this was not a proper application of the law of Article 1106 P. C. In Kendall v. State, 8 Texas Crim. App. 569, Judge Clark discusses Article 1106 and states how same should be given to the jury in application thereof to the facts of a given case. We quote from Judge Clark's opinion:

''The provisions of this article were directly applicable to certain phases of the evidence, and of paramount importance to the rights of the defendant. If the jury believed from the evidence that, at the time the fatal shot was fired by the defendant, the deceased, Brown, was making a violent attack upon Brooks, under circumstances which reasonably indicated an intention upon his part to murder or to maim Brooks, and the weapon used by Brown, and the manner of its use, were such as were calculated to produce either of those results, then the law presumed that Brown designed to murder or to maim Brooks, and the jury should have been so informed in the most explicit terms.''

Appellant has also an exception to that part of the court's charge wherein they are told that they are the exclusive judges of the facts and the weight of the testimony, contending that in a case such as this, and where the law of Article 1106 may be demanded, the charge ought to instruct the jury that where the law creates certain presumptions arising from facts the jury are not the exclusive judges of the facts. We are unable to agree to this. The State's theory, supported by its proof, was that deceased had no pistol and that he was

not attempting murder or any other crime when killed. Appellant's testimony was to a contrary effect. Upon this condition of dispute as to whether in fact there was a pistol in the hands of deceased when killed and as to whether he was attempting to kill appellant, no one could pases in judgment save the jury. Unless they found upon the facts,—dependent on what the witnesses said, and which of them the jury, believed,—that it was true that deceased had a pistol at the time he was shot, and was making a violent attack on appellant under cirmustances reasonably indicating an intention on his part to kill, then no presumption of law could arise. It is figuratively said but is actually true that a fountain cannot rise higher than its source; the presumption of law cannot arise until its facts be determined. These being in dispute, no one could settle them but the jury. In settling them the jury must be told in due and ancient form that they are to decide which of the witnesses told the truth. How else would appellant have the learned trial judge proceed? How else could this court decide? Appellant's witnesses swore that deceased had a pistol. The State's witnesses with equal positiveness denied this fact. If the trial judge had taken the settlement of this disputed issue away from the jury and decided it against appellant, we would promptly reverse the case. If he had decided it in favor of appellant, the rights of the State would have suffered irreparable injury. He should and did leave it where it belonged, in the hands of the jury for their decision.

We have weighed all the contentions made. The case has been here before. Richardson v. State, 91 Texas Crim. Rep. 318. The errors complained of but not here discussed have been considered. Appellant killed his brother. The shooting was in the presence of their mother. She was the State's main witness. She had made her home with appellant for years before the homicide. Other witnesses testified. The evidence was fully developed. The law seems to have been fairly submitted and in its light and upon the facts the jury have decided the case against appellant,

An affirmance will be ordered.

*Affirmed.*

ON REHEARING.

June 13, 1923.

MORROW, Presiding Judge.—The complaint of the receipt of evidence to the effect that the deceased bore a good reputation for peace and quietude is not sound. Appellant admitting the homicide and endeavoring to excuse it upon the ground of self-defense, introduced evidence of an attack or an apparent attack by the deceased at the time he was killed and that prior thereto he had made threats to kill or do injury to the person of the appellant. It was competent for

the State to meet such testimony by the evidence of the reputation mentioned. The expressions in the Arnwine cases, 50 Texas Crim. Rep. 254 and 477, to the contrary turned upon the construction of the statute from which we quote:

"Where a defendant accused of murder seeks to justify himself on the ground of threats against his own life, he may be permitted to introduce evidence of the threats made, but the same shall not be regarded as affording a justification for the offense, unless it be shown that, at the time of the homicide, the person killed by some act then done manifested an intention to execute the threat so made. *In every instance where proof of threats has been made, it shall be competent to introduce evidence of the general character of the deceased.* Such evidence shall extend only to an inquiry as to whether the deceased was a man of violent or dangerous character, or a man of kind and inoffensive disposition, or whether he was such a person as might reasonably be expected to execute a threat made." (Art. 1143, Penal Code.)

Reference, however, is made to some decisions of this court. One of these—Russell v. State, 11 Texas Crim. App. 289—makes no reference to uncommunicated threats. It simply held that Russell claiming to have acted in the defense of his life against the aggression of the deceased and having introduced evidence that the deceased had made threats against the life of the appellant, of which the accused was informed, the trial court was in error in excluding the evidence of the character of the deceased. Sims case, 38 Texas Crim. Rep. 642, if we properly comprehend it, was not one in which communicated threats were relied upon as a justification for the receipt of evidence of the reputation of deceased. Quoting from the opinion, it is said:

"It was shown by the bill that said testimony was admitted after defendant had introduced evidence of threats made by the deceased against him. We think the action of the court in this respect was proper."

In Rhea's case, 37 Texas Crim. Rep. 139, also cited in Arnwine's case, it was held that proof of the good character of the deceased was accepted on the ground that the appellant had proved that a previous difficulty had taken place and that threats had been made against the appellant by the deceased. We observe nothing in the case which indicates that the threat mentioned was communicated. The statute, as it will be noted, is subdivided. The first paragraph, doubtless, is restricted to communicated threats, and the right to justify the homicide because of them limited to occasions upon which the person killed, *by some act then done,* manifests an intention to execute the threat. The other subdivision, however, is general and appears unrestricted in the statement that in every case where proof of threats has been made, it shall be competent to introduce evidence of the general character of the deceased. This latter statement may, we think,

furnish a statutory basis for the receipt of evidence of the good character of the deceased where uncommunicated threats are proved; whether so or not it does not, in our judgment, restrict the common law rule relating to the receipt of evidence of threats and the character of the deceased in homicide cases. While uncommunicated threats do not afford justification, proof of them is held admissible in cases of self-defense where there is an issue as to who was the aggressor. Communicated threats afford aid to the jury in determining the state of mind of the accused so that the matter may be viewed from his standpoint. Uncommunicated threats bear upon the disposition of the deceased towards the accused and are usable to aid the jury to solve a controverted issue touching who began the difficulty when such issue is material. The court in this case informed the jury of the purpose of the un-communicated threat. On the subject under discussion, we quote from Wigmore on Evidence, Sec. 110:

"Where on a charge of homicide the excuse is self-defense, and the controversy is whether the deceased was the aggressor, the deceased's threats against the accused are relevant. The deceased's design to do violence upon the defendant is of some value to show that on the occasion in question he did carry out, or attempted to carry out, his design. Moreover, it is the fact of his design, irrespective of its communication to the defendant, that is evidential."

From the same author, we quote Section 63:

"When the issue of self-defense is made in a trial for homicide, and thus a controversy arises whether the deceased was the aggressor, one's persuasion will be more or less affected by the character of the deceased; it may throw much light on the probabilities of the deceased's action: * * * There ought, of course, to be some other appreciable evidence of the deceased's aggression, for the character—evidence can hardly be of value unless there is otherwise a fair possibility of doubt on the point."

As pointed out in the original opinion, the declaration in question in Arnwine's case is out of harmony with both prior and later decisions. See Jirou v. State, 53 Texas Crim. Rep. 18, and the other cases to which reference is made in the original opinion.

The form of the question put to the witnesses upon the reputation of the deceased is made the subject of discussion in the motion, though frankly we do not find the point made in the bill. However, treating it upon its merits, the question raised is that the statute on threats (Art. 1143, P. C.) declares that the inquiry shall extend only to whether the deceased was a man of *violent or dangerous character* or *kind and inoffensive disposition*. The language in which the proof was made was that the general reputation of the deceased for *peace and quietude* was good. The question was framed in language often found approved in the reports. One who is of a quiet and peaceful disposition is not of a violent and dangerous one. One is peaceable who is not

quarrelsome. Webster's Dict. A peaceful man is one who is quiet and harmless in his behavior. Cyclopedic Dict., page 678.

It is also suggested that as used in the statute, the words "general character" are distinguished from and do not mean the same as "general reputation." It occurs to us that it would be a harsh rule against the accused to place upon it such limitations in his effort to justify upon the ground of threats communicated to him. Especially is this true, bearing in mind, the clause of the statute touching the defense of threats accompanied by some act indicative of an intention to carry the threat into effect, is a part of the law of self-defense, and the evidence is to be viewed from the standpoint of the accused. He may well know the general reputation of the deceased for violence and be able to establish it, but to confine him to the proof of the character and give it the limited meaning contended for, would put the accused at a great disadvantage, and place limitations upon the statute passed for his benefit which, in our opinion, were foreign to its purpose. On the subject, we quote from Mr. Wharton's work on Criminal Evidence, Vol. 1, Sec. 58;

"Character, in the sense in which the term is used in jurisprudence, means the estimate attached to the individual by the community, not the real qualities of the individual, as conceived by the witness. It is not what the individual really is, but what he is reputed to be, generally, by the society and the community in which he moves and resides. * * *

The majority of American cases make no distinction between the use of the words 'character' and 'reputation,' using them interchangeably one for the other, though a few cases maintain that the distinction between the two words should be observed."

The views of Mr. Wharton are the same in substance as are expressed in the text in Cyc. of Law & Proc., Vol. 6, page 892, in support of which text numerous cases are cited. This principle is not in conflict with the rule which forbids the proof of a specific act by evidence of reputation.

The charge submitting the law touching the use of a deadly weapon is quoted in the original opinion. It is criticised in the motion for rehearing in that it contains the words "under circumstances which reasonably indicated an intention to murder or inflict serious bodily injury upon him." Appellant insists that this is an undue restriction upon the right of the jury to apply the legal presumption intended by Article 1106 of the Penal Code. Doubtless, the charge would be more regular if it had used the words of the statute instead of those quoted above. However, the injurious effect of the departure seems questionable at least. Under the statute, the presumption of the intent to kill arises when at the time of the homicide the person killed *is using* a deadly weapon. The charge under consideration may convey the idea that the presumption would prevail

if the circumstances indicated that deceased was using a pistol. Independent of the paragraph of the charge in question, the court told the jury to acquit if, from the words or acts of the deceased, as viewed from appellant's standpoint, in the light of all the facts within his knowledge, it reasonably appeared to him that he was in danger of death or serious bodily harm, and on these matters the jury was, in the same pargraph, told to resolve any reasonable doubt they might have in appellant's favor.

In Gunn's case, No. 6459, recently decided, this court by a majority opinion, upon the evidence touching the use of a deadly weapon not materially different from the present case, held that although there was no reference in the charge of the trial court to the presumption arising from the use of a deadly weapon, a reversal was not required. In that case, the court charged, as in this one, upon the law of self-defense, embracing both real and apparent danger, but did not attempt to charge on the presumption mentioned in Article 1106 of the Penal Code. In the opinion mentioned, this ruling is based upon the terms of Article 743 of the C. C. P., in which a reversal is forbidden, because of a fault in the charge not calculated to injure the rights of the accused nor to militate against the fairness and impartiality of his trial. The facts revealed in Gunn's case, supra, were not more cogent to show an absence of injury than those in this one, and in the instant case, the charge was more favorable to the appellant in that it did embrace a specific charge upon the presumption named in Article 1106, supra. If there be error against the appellant in the manner in which the jury was, in the instant case, advised of the presumption arising from the use of a deadly weapon by the deceased, it was not of that prejudicial character which would, in view of Article 743, supra, authorize a reversal of the judgment.

From what has been said, it follows that, in our judgment, the motion for rehearing should be overruled, and it is so ordered.

*Overruled.*