## Henry Pollard, Jr., v. The State.

### No. 14516. Delivered January 20, 1932.

The opinion states the case.

*A. C. Chrisman* and *J. K. Russell,* both of Cleburne, for appellant..

*Penn J. Jackson,* County Attorney, of Cleburne, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; penalty assessed at confinement in the penitentiary for thirty years.

At the home of Sandy Heath there was a gathering of negroes at which the appellant, Henry Pollard, Jr., his brother, two sisters and another woman were present. About eight o'clock at night, the deceased, Everick Earl, his son, D. W. Earl, Argie Lee Thomas nd Alvin Brown came to the Heath home in an automobile. A sudden quarrel arose over the use of a pump for inflating an automobile tire. After the passage of some hot words, Everick Earl was struck with a knife in the hands of the appellant. A wound was inflicted which resulted in the death of Earl. Touching the incidents immediately preceding and attending the striking of the fatal blow, the evidence is conflicting. The state's witnesses declared that the appellant flashed a light from a flashlight in the face of Everick Earl and stabbed him in the neck with a knife; that the deceased at the time had his hands in his overcoat pocket and was making no demonstration against the appellant. The appellant's witnesses declared in substance that the deceased was asked by the appellant about the controversy which the deceased was having with the appellant's brother; that deceased with an oath said it was none of the appellant's business, adding, "I will cut your neck off". Accompanying this remark the deceased seized the appellant by the collar. The appellant protested and asked deceased to release him. Deceased continued to hold the appellant and made a motion as though to draw a weapon. Upon making such demonstration, the deceased was struck by the appellant with a knife.

In his own behalf the appellant testified that when inquiry was made about the controversy between the deceased and the appellant's brother, the deceased began cursing, seized the appellant and made a demonstration as if to draw a weapon; that he did not intend to kill the deceased but cut him only in order to release himself.

After the state closed its testimony in chief and the appellant had rested his case, the state proffered the witness Tarter to prove the good reputation of the deceased for peace and quitude. The jury was retired and the appellant was heard in opposition to the reception of the testimony. Objection was made upon several grounds in substance to the effect that there was no testimony before the jury constituting a predicate for the introduction of testimony upon the subject mentioned, namely, that the reputation of the deceased had not been attacked; that the accused did not seek to justify his act upon the ground of threats; that there were no threats made by the deceased which were known to the appellant or communicated to him; that the evidence was irrelevant and calculated to injure the accused and prejudice his case. The court stated that he would overrule all objections and would permit the witness to make the proof mentioned. From the bill it appears that the appellant was aware that the witness would testify to the good reputation of the

deceased in the particular mentioned and that there were present a number of other witnesses who would do likewise. He therefore stated to the court that he was willing to waive the introduction of such testimony and permitted the court to state in substance that i was conceded by he appellant that the reputation of he deceased in the particulars mentioned was good. It also appears from the bill that this concession was made in order to save time and to avoid the necessity of calling witnesses upon a subject which the appellant could not controvert; and that in making the concession he in no way waived his objection to the action of the court in receiving testimony of the nature involved. The jury was recalled and the judge made the statement to them in accord with the agreement mentioned, namely, that it was admitted that the general reputation of the deceased for peace and quietude was good.

That evidence of threats made by the deceased to take the life of the accused on trial for homicide, under certain circumstances, becomes relevant and of vital importance, is fundamental as is shown by the statutory declarations and judicial decisions throughout the jurisprudence of this state. See Dunne v. State, 98 Texas Crim. Rep., 7, 263 S. W., 608; Richardson v. State, 94 Texas Crim. Rep., 616, 253 S. W., 273; P. C., art. 1258. Under certain conditions, it becomes necessary for the court to instruct the jury touching the evidence of threats made by the deceased and the effect of such proof upon the rights of the accused on trial. This appears from the statutes and precedents above cited. In instances where evidence of threats antecedent to the conflict bcomes relevant and is introducd, the way is opened thereby for the introduction of evidence relative to the general reputation of the deceased as to whther he bore such reputation as a violent or dangerous character or was a man of kind and inoffensive disposition, or whether he was such a person as might be expected to execute a threat. See article 1258, supra. The right of the state, however, to introduce evidence touching the general reputation of the deceased in the particular mentioned results from evidence of threats made antecedent to the conflict in which the killing took place. It is not made relevant by evidence that the deceased, after the conflict began and during the continuation thereof, made the statement that he would kill his adversary. It is never competent for the state, in the first instance, to prove the general reputation of the person slain for peace and quietude. Such has been the declaration of this court on several occasions. From the case of Bullock v. State, 73 Texas Crim. Rep., 419, 165 S. W., 196, 200, the following quotation is taken: "It is also well established that when the evidence is confined to the acts of the deceased at the very time of the killing and are the res gestae thereof, and such acts show him to be a violent and dangerous man, then the State cannot rebut by proof of his good reputation in those respects." See also the following cases: Gregory v. State, 50 Texas Crim. Rep., 73, 94 S. W., 1041; Wakefield v.

State, 50 Texas Crim. Rep., 124, 94 S. W., 1046; Moore v. State, 46 Texas Crim. Rep., 54, 79 S. W., 565. By analogy the principle stated is supported by numerous cases denying the right of the state, in the first instance, to introduce evidence to the effect that the deceased bore a good reputation for peace and quietude. (See collation of cases in Vernon's Tex. P. C., 1916, vol. 1, p. 711). Also by numerous cases holding that proof of threats made by the deceased during the fatal difficulty did not require an instruction to the jury in favor of the accused embodying the law set forth in the article of the statute above cited, namely, article 1258, P. C.

The bill of exception is made the subject of criticism by counsel for the state. However, the bill is deemed sufficient, in the light of the record, to demonstrate that over the protest and specific objection of the appellant, the court sanctioned and received proof of the fact that the deceased bore a good reputation for peace and quietude when, under no phase of the case as revealed by the facts, was such proof admissible. Considering the verdict that was rendered and the evidence adduced, the evidence improperly received was calculated to impair the appellant's right of self-defense and was calculated to enhance the verdict. The error cannot be regarded otherwise than as harmful.

For the reasons stated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*